UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CR 60 HEA |
| | ) | |
| BILLY JOE NOBLE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The defendant has filed Motion of Defendant to Suppress Evidence and Statements (Document #12). The government filed Government's Response to Defendant's Motion to Suppress Evidence and Statements (Document #17). An evidentiary hearing was held. A transcript of the hearing was ordered and filed, at which time the matter was taken as submitted.

## Factual Background

On August 31, 2006, Jeanie Wagner contacted the Campbell, Missouri, Police Department to report a burglary. Wagner stated that her mother, Grace Hickerson, had recently passed away and that Hickerson had been living at 115 East South Street in Campbell, Missouri. Hickerson's personal property was still in her residence. Wagner reported that she went to the Hickerson house to check on the property and discovered that the house had been broken into and several items had been stolen. She described the stolen items as some old coins, a shotgun, a .22 caliber rifle, tools, jewelry and a jewelry box.

The officers then discovered that Noble had tried to sell a .22 caliber rifle to Charles Cashion. Cashion did not purchase the rifle, but he did loan Noble some money. Cashion took some old coins

from Noble as security for the loan. Cashion told the officers that he asked Noble where he acquired the coins. Noble told him that he and a friend had been tearing down a shed and found them in a bucket. The gun and loan conversation between Cashion and Noble occurred on September 4, 2006. Cashion turned the coins over to the officers.

Campbell Chief of Police Weldon Wallace then interviewed Julia Smith on January 17, 2007. Smith had been the girlfriend of Noble. They had shared a house at 105 Miller Lane in Campbell. Smith told the officer that Noble told her that he had burglarized the Hickerson house. Smith told the officer that Noble had sold the .22 caliber rifle to a neighbor named Charles Digby.

Wallace made contact with Digby. Digby confirmed that he purchased a rusty, Remington rifle from Noble and that Noble had given him a receipt for the rifle during the sale. Digby produced the receipt and let Wallace take it. Digby had sold the rifle at the Poplar Bluff Sale Barn to another unknown individual. The rifle has never been recovered.

Wallace continued his interview of Smith. She stated that Noble had committed other burglaries during the past few months and that some of the property from those burglaries was in her house at 105 Miller Lane. At that time, Smith was still a resident at 105 Miller Lane. She gave consent for Wallace to go to her house and obtain those items. Wallace went to that house. Smith took Wallace through the house and identified the television and DVD player that were stolen by Noble. Those items were seized by Wallace. Smith disclosed that these items were stolen by Noble from the Jackie Mitchell home in Gibson, Missouri. Mitchell later identified those items as having been stolen from her home during October, 2006.

Wallace then contacted Noble and brought him to the Campbell Police Station on January 17, 2007. Wallace read Noble his <u>Miranda</u> warnings from a waiver form. Noble indicated he understood

the warnings and agreed to speak with Wallace and signed the written waiver form indicating that he understood his rights and was waiving his Constitutional right not to speak with the officer.

Wallace asked Noble about the Hickerson burglary. Noble then told Wallace that Jeanie Wagner could not prove that he stole the coins and he had never seen the stolen TV and DVD player before. Noble was detained, pending further investigation.

The next day, on January 18, 2007, Wallace transported Noble to the Dunklin County Jail. During that trip, Noble told Wallace that a neighbor of his, named Jeanie, and Julia Smith and Noble's young daughter had stolen the property from the Jackie Mitchell house in Gibson, Missouri. Noble stated that he got the coins and guns from his neighbor on South Locust Street in Campbell. This neighbor lived in Florida, according to Noble. Wallace asked Noble if he wanted to give a written statement. Noble replied that he might later on.

The television and DVD player stolen from the Jackie Mitchell house were seized by Chief Wallace.

## **Defendant's Grounds for Suppression**

In his Motion to Suppress Evidence and Statements, the defendant makes certain claims:

1) Any statements given by the defendant were coerced, were without <u>Miranda</u> warnings and, therefore, were involuntary and inadmissible.

2) Any statements given were a result of an illegal arrest and, therefore, inadmissible.

3) Any statements or other evidence obtained as a result of statements given were obtained as a direct result of violations of the Fifth Amendment, as stated earlier, and, therefore, are inadmissible.

4) The search of the defendant's residence and person was illegal because it was performed

-3-

without a valid search warrant issued on probable cause and not pursuant to a lawful order or any other legal justification.

## Discussion

The defendant made statements on two occasions. On the day he was arrested, January 17, 2007, the defendant gave a statement to Weldon Wallace, Chief of the Campbell, Missouri, Police Department at the police station. The second statement was given by the defendant on January 18, 2007, when Mr. Noble was being transported from the Campbell Jail to the Dunklin County Jail.

At the evidentiary hearing, Chief Wallace testified that on January 18th on the way to the Dunklin County Jail, he noticed that Mr. Noble seemed to be rather upset and Wallace asked Noble what was bothering him. Noble responded that "he hadn't done anything wrong, that a lady with the name of Jeanie and this Julia Smith and his youngest daughter had went in the house at Gibson and stole the items there, the TV and the DVD player. He said he got the gun and – the guns and the coins from his neighbor that lived there beside him." Chief Wallace knew that the neighbor now lives in Florida. Wallace asked Noble if Noble wanted to give a written statement and Noble responded he might at some time in the future.

## Defendant's Statements

When Wallace saw Billy Noble at the home Miss Smith had pointed out to him earlier (Smith and Noble had broken up and Noble was now living with another woman at her house), he told Mr. Noble that he needed to talk to him about some burglaries and they got into Wallace's car and went to the police station. Wallace testified that he did not remember any conversation with Noble about the burglaries while at the house or on the drive to the Campbell Police Station. Wallace stated that when they got to the station, he filled out the arrest sheet, read Mr. Noble the <u>Miranda</u> warnings and

-4-

showed him the TV and DVD player which Noble said he had never seen before.

Chief Wallace identified Government's Exhibit 3 as the Miranda warning he gave Mr. Noble. Wallace stated that Exhibit 3 is a standard copy of a Miranda warning form kept at the Campbell Police Station. Wallace stated that after each question asked, as part of the Miranda warnings, are the words "Do you understand?" and after each question is "Yes" printed in Billy Noble's handwriting and Billy's signature is below the five warnings. Wallace stated that Billy also signed the Acknowledgment and Waiver of Rights of the form. Wallace stated he (Wallace) probably wrote the time of 17:45 (5:45 P.M.) at the top of the page. Wallace stated the form was filled out prior to his talking to Mr. Noble about the burglaries. After the form was filled out, Wallace showed Noble the TV and DVD player and Noble said he had never seen them before. (Tr. 16-19).

When asked about his tone of voice during the conversation with Mr. Noble on either day, the Chief responded, "The best I remember, we talked pretty much normal to each other." (Tr. 21). When asked about Noble's mannerisms, Wallace responded, "Other than the second day, I mean he was pretty much normal. The second day, he seemed to be really upset." Id. Mr. Noble was not combative with Wallace on either the 17th or the 18th. Wallace was not angry with Noble. At one point, Wallace decided that Noble was not being truthful and Wallace testified, "I think I told him something to the effect that I didn't want to talk to somebody that wasn't being truthful with me." (Tr. 22). Wallace testified that he was not angry at Noble but "he might have thought I was, you know." He testified that "Billy's not afraid of me." Wallace did not display his gun during either conversation on January 17th or January 18th. (Tr. 22). Mr. Noble was not handcuffed on the 17th when the conversation took place at the police station. He was handcuffed on the trip from the Campbell Jail to the Dunklin County Jail on the 18th. Noble would have been riding in the front seat

with Wallace. Wallace testified that he did not make any promises to Noble that Noble would receive something or be punished in some way if he did not talk to Wallace. Wallace stated he was not aware of any threats made by anyone to Mr. Noble in order to get him to make a statement to Wallace.

Chief Wallace did not know of anyone else interviewing Mr. Noble besides himself.

When asked if Mr. Noble was placed in handcuffs at the girlfriend's residence on the 17th, Wallace responded, "I really don't remember. Me and him normally gets along pretty good, so he may not have been; then again, he might have been, I don't remember." (Tr. 30). Wallace did not remember what he and Noble talked about on the ride back to the Campbell Police Station. (Tr. 31). Chief Wallace thought the interview on the 17th at the Campbell Police Station was probably not over five minutes in length. At no time on the 17th or 18th did Mr. Noble ask to speak to an attorney.

On the ride from the Campbell Jail to the Dunklin County Jail on January 18th, 2007, the defendant was not given the Miranda warnings a second time. (Tr. 32). The ride to the Dunklin County Jail was twenty miles and they talked. As Wallace testified, Noble had responded when asked why he was upset and Noble indicated that he hadn't done anything wrong. Noble stated that Jeanie and Julia Smith and his youngest daughter had stolen items from the home in Gibson, Missouri, the TV and the DVD player, and that the guns and coins he had gotten from a neighbor that lived beside him. According to the Chief, during the ride to the Dunklin County Jail, they also talked about other things. The Chief did not remember asking any further questions of Mr. Noble other than "What's wrong?" He did not remember asking any follow-up questions.

The defendant did not offer any evidence at the evidentiary hearing.

The court finds no evidence of coercion, threats or any type of pressure applied to Billy Joe Noble in order for him to make the statements he made.

On the question of voluntariness of the statements, in Thatsaphone v. Webber, 137 F.3d 1041, 1046 (1998), the Eighth Circuit quoted from Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986): "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."

A question remains whether the defendant should have been given the Miranda warnings on the 18th when he made his statement in response to Wallace's question of why he was upset.

First, the court finds the question asked by Chief Wallace was not interrogation. In Rhode Island v. Innis, the Supreme Court defined interrogation as "express questioning or its functional equivalent." 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90 (1980). The functional equivalent of interrogation consists of "words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. In United States v. Chipps, 410 F.3d 438, 444-45 (8th Cir. 2005), the Court of Appeals for the Eighth Circuit found there was no functional equivalent of interrogation during a defendant's fingerprinting when the officer said he had tried to stop defendant on the freeway on the previous day and the defendant subsequently made an incriminating response.

It should be kept in mind also that when Mr. Noble was in Chief Wallace's custody, it was the law officer's duty to see that the defendant was properly treated. If there were a problem, such as the defendant's health, which was causing him to be upset, then it would have been Wallace's duty to meet the defendant's needs. Wallace had noted that "The second day, he seemed to be really upset." (Tr. 21).

Under Miranda, warnings must be given only when a suspect is both in custody and being subjected to state interrogation. Illinois v. Perkins, 496 U.S. 292, 297, 110 S.Ct. 2394, 2397 (1990).

Even were one to feel that Wallace's question to the defendant, why he was upset, was calculated to obtain incriminating evidence, and the court does not interpret the question that way, the defendant had not retracted his waiver of the Miranda warnings nor, as previously noted, had he asked for an attorney. The administration of the Miranda warnings occurred at 5:45 P.M. at the Campbell City Jail on January 17th, 2007. According to the probable cause affidavit prepared by Chief Weldon Wallace, Government's Exhibit 4 at the evidentiary hearing, the transportation of Billy Noble to the Dunklin County Jail took place at 5:00 P.M., about twenty-four hours later than the time the original Miranda warnings were given. If a higher court should find Wallace's question to the defendant of what was wrong when he appeared upset was actually interrogation, this court finds that the waiver of Miranda warnings provided by the defendant approximately twenty-four hours previously remained in effect. United States v. Andaverde, 64 F.3d 1305, 1313 (9th Cir. 1995) (interval of one day did not nullify prior Miranda warnings). In Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995), the Court held that a 15-hour time lapse did not diminish the effectiveness of Miranda warnings. See also Maguire v. United States, 396 F.2d 327, 331 (9th Cir. 1968) (3-day interval permissible).

In Evans v. Swenson, 455 F.2d 291, 296-97, the Eighth Circuit stated:

This Court has held that the "Miranda" warning need not be repeated in full each time the interrogation process is resumed after an interruption. Tucker v. United States, 375 F.2d 363, 369 (8th Cir. 1967); Miller v. United States, 396 F.2d 492 (8th Cir. 1968), cert. denied, 393 U.S. 1031, 89 S.Ct. 643. In the latter case, this court stated (p. 496):

> It is difficult to lay down a rule of general application, and we will not attempt to do so here. In each case, the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?

In this case, the defendant, Billy Joe Noble, with a full knowledge of his legal rights, knowingly and intentionally relinquished them.

Based on the totality of the circumstances surrounding the waiver and interrogation, (Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986)), the court finds the defendant voluntarily, knowingly and intelligently waived his Miranda rights and the statements he made, both on January 17th, 2007, at the Campbell City Jail and during the trip from the Campbell Jail to the Dunklin County Jail, were voluntary, not coerced and are admissible into evidence.

The defendant's first argument that the defendant's statements were coerced and made without Miranda warnings and, consequently, were involuntary and inadmissible should be denied.

## **Illegal Arrest?**

The defendant contends also in his motion to suppress that any statements given by the defendant were elicited as a result of an illegal arrest and, therefore, are inadmissible.

The Factual Background detailed earlier provides probable cause for the arrest of the defendant. It relates the fact that Jeanie Wagner reported that her mother's property had been stolen, including old coins, a shotgun, a .22 caliber rifle and other items. Officers then learned that the defendant, Billy Noble, had tried to sell a .22 caliber rifle to Charles Cashion. Cashion claimed that he did not purchase the rifle but did loan Noble money and took some old coins from Noble as security for the loan. When asked by Cashion where the coins came from, Noble told him that Noble and a friend had been tearing down a shed and found them in a bucket. Cashion turned the coins over to the officers. On January 17, 2007, Julia Smith, a previous girlfriend of Noble, was interviewed. They had shared a house at 105 Miller Lane in Campbell, Missouri. Smith told the officer that Noble told her that he had burglarized the Hickerson house (Jeanie Wagner's mother's house). Smith told

the officer that Noble had sold the .22 caliber rifle to a neighbor named Charles Digby. Chief Wallace made contact with Digby, who confirmed that he purchased a rusty Remington rifle from Noble and Noble gave him a receipt for the rifle. The receipt was produced and was entered into evidence at the evidentiary hearing as Government's Exhibit 2. Digby sold the rifle at the Poplar Bluff Sale Barn to an unknown individual.

Julia Smith told Chief Wallace that Noble had committed other burglaries during the past few months and that some of the property from those burglaries was in her house at 105 Miller Lane where she was still a resident. She gave consent for Wallace to go to her house and obtain those items. Wallace went to the house and Smith took Wallace to the front room and identified the television and DVD player that were allegedly stolen by Noble. Those items were seized by Chief Wallace. Smith said those two items had been stolen by Noble from the Jackie Mitchell home in Gibson, Missouri. In the probable cause affidavit prepared by Chief Weldon Wallace, Wallace stated that Jackie Mitchell and Scotty Davis identified the TV and DVD as items taken from their home in Gibson, Missouri.

Chief Wallace brought Billy Noble to the police station and gave him the <u>Miranda</u> warnings. The defendant then stated, with reference to the stolen coins, that Jeanie Wagner could not prove he stole the coins and that he had never seen the stolen TV and DVD before.

Regardless of whether the defendant was arrested when Wallace took Mr. Noble to the police station or after defendant made his statement at the police station, Chief Wallace had probable cause to believe that the defendant had burglarized homes and stolen the coins, a rifle and the DVD and television set.

The court finds that the defendant's second contention, that the defendant's statements were

-10-

the result of an illegal arrest, is without merit and the statements are admissible.

## **Defendant's Rights Under the Fifth Amendment Violated?**

The court has found that the defendant waived his rights under the Miranda warnings, and the court finds that the defendant's third claim for suppression, that the defendant's Fifth Amendment rights were violated in the taking of those statements, is not supported by the evidence and should be denied.

## **The Search of Defendant's Residence and Seizure of Certain Items of Evidence**

The defendant claims in his fourth contention that officers of the Campbell Police Department performed an illegal search of the defendant's residence and seized certain items of evidence from the residence and person of the defendant. Defendant claims that the search was without a valid search warrant and without any other legal justification.

There was no search warrant used in the search of 105 Miller in Campbell, Missouri. On January 17, 2007, 105 Miller was no longer the residence of the defendant. The defendant had moved out. He and Julia Smith had separated. Apparently the home belonged to the defendant's brother. (Tr. 13). The defendant was living with another woman at another location in Campbell, Missouri. (Tr. 15).

In addition, Julia Smith did live at 105 Miller where the TV and DVD were found and she brought Chief Wallace to the home and showed him the DVD and TV. As a resident at 105 Miller, Julia Smith had a right to give permission to enter the home to Chief Wallace. The only conversation between Chief Wallace and the brother (the brother is only identified as Billy Noble's brother throughout the transcript) was that the brother said he did not know that the DVD and TV were stolen. (Tr. 13). The brother did not object to Wallace's taking the DVD and TV.

The TV and the DVD were in the front room, not plugged in, and Wallace did not search anywhere else in the residence or seize any other items.

There is no evidence that any items were seized from the defendant's person.

The defendant's fourth contention, that evidence should be suppressed because of an illegal search of the defendant's residence, should be denied.

For the foregoing reasons, the Motion of Defendant to Suppress Evidence and Statements (Document #12) should be denied.

**IT IS, THEREFORE, RECOMMENDED** that the Motion of Defendant to Suppress Evidence and Statements (Document #12) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

　　　　　　　　　　　　　　　　　／s／ Lewis M. Blanton
　　　　　　　　　　　　　　　　　LEWIS M. BLANTON
　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated this 27th day of December, 2007.